United States District Court
Southern District of Texas
**ENTERED**
December 02, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:17-539 |
| | § | |
| VERNON SONSTENG, | § | |
|   Defendant. | § | |

## SEALED MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Vernon Sonsteng's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 31), to which the United States of America (the "Government") has responded (D.E. 33) and Defendant has replied (D.E. 34, 35).

## I. BACKGROUND

In July 2017, the Portland, Texas, Police Department stopped Defendant for a traffic violation, at which time he was arrested for an outstanding parole warrant and his vehicle was impounded. An inventory of the vehicle revealed numerous counterfeit Texas Driver Licenses bearing the identifying information of identity theft victims with Defendant's photograph. His vehicle also contained numerous counterfeit checks, authentic stolen checks, computers, printers and specialized materials suitable for creating false identity documents and counterfeit checks, check-printing software, lists of bank account and routing numbers, a large quantity of stolen mail, and 12 cellphones. Additional investigation determined that Defendant and a co-conspirator would manufacture fraudulent driver licenses and other identification documents using the stolen identities of others, which they would then use to pass counterfeit and stolen checks drawn on the bank accounts of victims. Investigators identified more than $22,000.00

worth of counterfeit or stolen checks passed using stolen identities by Defendant in the days before his arrest.

Defendant was charged in a five-count indictment alleging possession of more than five false identification documents, manufacturing false identification documents, aggravated identity theft, trafficking in counterfeit securities, and possession of stolen mail. He eventually pled guilty to one count of knowingly possessing with the intent to use unlawfully or transfer unlawfully five or more false identification documents and one count of aggravated identity theft. He has served roughly 19 months (34%) of his 56-month sentence and has a projected release date, after good time credit, of April 14, 2023.[1]

Defendant now moves the Court to reduce his sentence to time served and add a condition of home confinement at the outset of his term of supervised release because his underlying medical conditions (hypertension, chronic viral hepatitis C, and an unknown mass in his neck) make him particularly vulnerable to severe illness or death should he contract COVID-19 while in prison. Defendant submitted a written request for compassionate release with the Warden at FCI Bastrop on May 8, 2020, but says he never received a response. *See* D.E. 31-7. The Government opposes Defendant's motion because: (1) his COVID-19 concerns do not constitute extraordinary and compelling reasons under the compassionate-release statute; (2) he has not shown that the Bureau of Prisons is incapable of managing the COVID-19 pandemic; and (3) he is a public-safety risk.

## II. LEGAL STANDARD

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under limited circumstances:

---

1. Defendant has also petitioned the Bureau of Prisons for credit towards his federal sentence for the roughly six months he spent in secondary federal custody from August 8, 2017, to February 1, 2018, and from April 10–20, 2018.

**(c) Modification of an Imposed Term of Imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
  (1) in any case—
    (A) the court, upon motion of the Director of the Bureau of Prisons, or *upon motion of the defendant after the defendant* has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
      (i) *extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

The applicable United States Sentencing Commission policy statement provides that extraordinary and compelling reasons for early release exist where:

**(A) Medical Condition of the Defendant.—**

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant. –**

The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

      (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;

  **(C) Family Circumstances. –**

      (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

      (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  **(D) Other Reasons. –**

      As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

Even if "extraordinary and compelling reasons" for early release exist, the Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

The Court must also consider whether a reduction is consistent with the applicable section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The applicable statutory factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the

offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with, among other things, any needed medical treatment; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7).

> With respect to motions for compassionate release based on COVID-19:
>
> A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

"In general, the defendant has the burden to show circumstances meeting the test for compassionate release." *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

## III. ANALYSIS

Defendant is 58 years old and has hypertension, chronic viral hepatitis C, and an unknown mass in his neck. He maintains that his medical conditions, along with his age, drastically increase the likelihood of complications were he to contract COVID-19 in prison, which is more likely given his inability to practice social distancing. Defendant emphasizes that he has had no disciplinary infractions while incarcerated and has taken several courses, including a basic computer course and internet and Microsoft skills courses. *See* D.E. 31-4, 31-8. If released, he will live with his wife.

5

The Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction; however, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone. *See* U.S.S.G. § 1B1.10, app. n.1(B)(iii). While Defendant *might be* at an increased risk for severe illness from COVID-19 due to his hypertension and chronic viral hepatitis C,[2] the Court nonetheless finds that any potential risk to Defendant's health should he contract COVID-19 in prison is outweighed by the danger to the community if he is released.

As set forth *supra*, Defendant passed $22,000.00 worth of counterfeit or stolen checks using stolen identities in the days before his arrest. Besides the individuals whose identities he stole, each passed check also victimized the merchant who accepted the check. Moreover, Defendant has an extensive criminal history spanning several decades, often reoffending while still on parole or supervised release for a prior offense. In 1988, Defendant was convicted of manufacturing a controlled substance and sentenced to 72 months in federal custody. In 1990, an additional 18 months were added to his sentence after an escape conviction. In 1994, while still on federal supervision, Defendant was convicted in state court of unauthorized use of a motor vehicle by a repeat felony offender, felony criminal mischief, and possession of cocaine, for which he received three concurrent 20-year sentences. He also was ordered to serve one year in

---

2. According to the Centers for Disease Control and Prevention, "Currently, we have no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19." CDC, *What to Know About Liver Disease and COVID-19* (May 5, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. However, older adults (age 65 and above) and people of any age who have certain underlying medical conditions are at higher risk for severe illness from COVID-19. *People with Certain Medical Conditions*, CDC (Nov. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. People of any age with the following conditions *are* at increased risk of severe illness from COVID-19: Cancer, Chronic kidney disease; COPD (chronic obstructive pulmonary disease); Immunocompromised state from solid organ transplant; Obesity; Severe Obesity; Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; Sickle cell disease; Smoking; and Type 2 diabetes mellitus. People with the following conditions *might be* at an increased risk for severe illness from COVID-19: Asthma (moderate-to-severe); Cerebrovascular disease; Cystic fibrosis; Hypertension; Immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; Neurologic conditions, such as dementia; Liver disease; Overweight; Pregnancy; Pulmonary fibrosis; Thalassemia; and Type 1 diabetes mellitus.

custody after he was convicted of burglarizing a coin-operated machine. Defendant was released from custody in November of 2000. In 2001, he was arrested for unauthorized use of a motor vehicle and felony possession of a controlled substance. He was sentenced to 90 days' custody on the drug charge and 2 years for the stolen vehicle. In 2007, Defendant served 60 days after providing false information about his identity to police. In 2009, he was convicted of burglarizing another coin operated machine, for which he served 90 days' confinement. In 2011, he was sentenced to five months' incarceration for burglarizing coin operated machines. In 2012, he received a probated sentence for a felony criminal mischief conviction, but probation was later revoked and he served 18 months in custody. In 2015, Defendant was sentenced to four years in state custody for being a felon in possession of a firearm. He was still on parole for the firearm charge when he was arrested in March of 2017 in the current case.

The Court further finds that the § 3553(a) factors, as considered in the specific context of the facts of Defendant's case, do not warrant a reduction in his sentence. Specifically, releasing him after he has served only a third of his sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense, nor would it deter criminal conduct or protect the public from further crimes.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 31) is **DENIED**.

It is so **ORDERED** this 1st day of December, 2020.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE